Louis M. Shimel, Asst. U. S. Atty., of Charleston, S.C., for plaintiff.

M. W. Seabrook, of Sumter, S. C., for defendant.

**UNITED STATES v. NORTH STATE LUMBER CORPORATION.**

**Civ. No. 895.**

District Court, E. D. South Carolina, Charleston Division.

Aug. 9, 1943.

WARING, District Judge.

The above-entitled cause was commenced by the service of a summons and complaint and the defendant filed an answer. Thereafter a pretrial conference was had and various motions heard in connection with the pleadings and I filed an order dated January 30, 1943, as a result of which an amended complaint and an amended answer were served and filed. The case came on to be heard before me on July 23, 1943, without a jury. A stipulation as to certain agreed facts was introduced and testimony taken. Before the commencement of the taking of testimony the defendant moved to dismiss the cause and renewed such motion at the conclusion of plaintiff's testimony and again at the conclusion of the entire testimony, the grounds of which are set forth in the record. This motion was refused and the case heard on the merits.

It appears from the pleadings, stipulation and testimony, that Dorchester Land & Timber Company formerly owned a large tract of land, which it sold and conveyed to the United States by deed dated December 29, 1933, which deed was duly recorded. By this deed a tract of land was conveyed, but certain timber, timber rights, rights of way and other rights incidental were reserved, and among other things, it was provided that the camp sites and buildings might be removed from the land during a period of one year after the ending of the reserved timber and other incidental rights. Under date of April 17, 1935, the owners of the reserved timber and incidental rights

gave an option to purchase same to the United States, in which special reference is made to these rights of removal of buildings. Apparently thereafter the government exercised its option and took a deed from Dorchester Land & Timber Company dated August 8, 1935. No express reference was made to the buildings, but the deed purported to and did convey the entire timber rights and all other rights owned and heretofore reserved by the grantor in the said tract of land, which had already been acquired by the United States. The defendant objected to the introduction of the option above referred to and consideration of same by the court, claiming that it had been merged in the conveyance by which the timber rights and other rights were taken. I allowed the introduction of this option subject to objection and further consideration. I think it immaterial whether the option be considered or not. It throws some light on the intention of the parties, but as a matter of fact, has little probative value, since I find that the deed of August 8, 1935, conveyed unto the United States all outstanding rights which it did not have already. Included in this are any and all rights connected with all buildings or improvements, including the house which is in dispute in this cause.

It appears that there was a residence, which is the subject matter of this suit, on the tract of land, which residence was occupied by one A. C. Quillian at the time the land was acquired by the government. When the government acquired the timber rights, which included the right that all houses and other property on the land were subject to removal within a year, negotiations were opened with a view to the rental of a small tract of land surrounding and on which this house was situate. At that time the grantor still had the right to remove the buildings. In the meantime The North State Lumber Corporation acquired rights and holdings of Dorchester Land & Timber Company. These negotiations were had between representatives of The North State Lumber Corporation and representatives of the United States Forestry Service. The corporation desired to obtain a lease or permit to use the small tract of land on which the house was situate, but was informed by the government that its regulations did not allow the issuance of such permits except to the person who actually owned the house. The North State Lumber Corporation at that time did have the right to remove this house and it exe-

cuted a bill of sale to Quillian for the said house and this bill of sale was exhibited to the government, and as a result the government issued a permit use to Quillian and this was allowed to remain in force for a total period of about six years. Testimony on behalf of the government shows that this bill of sale was exhibited to the government and based entirely upon this, the permit was issued, for according to government regulations such permits are issued only to those then having title to the building in question. The government was thus led to believe that Quillian was the bona fide owner of the house and had the right to use it. The rental to be paid by Quillian was $5 per annum. The defendant now shows that this bill of sale was never delivered to Quillian. Quillian is dead and no statement or writing from him is available.

It further appears that after The North State Lumber Corporation had sent this bill of sale to the Forestry Office at Columbia, S. C., it was apparently returned since the original bill of sale has been for a considerable time in the files of The North State Lumber Corporation, and as a matter of fact, was produced by it at the trial. The position now taken by the defendant is that the bill of sale was never delivered and that Quillian never had any title to the house although it was cognizant of the fact that the permit to the use of the land on which the house stood was issued to Quillian and would never have been issued except on the representation that Quillian had actually acquired title to the house.

It further appears that The North State Lumber Corporation entered into an arrangement with Quillian by which the last-named paid rentals to The North State Lumber Corporation for the use of the house.

The plaintiff in this case contends that The North State Lumber Corporation had no title to the land or house and had no interest whatsoever in the property and had no right to charge rental and that if and when it did charge rental and collect the same from Quillian it made itself a trustee de son tort and is accountable to the plaintiff for the sums collected. It appears that the sums collected during the period in dispute amounted to $450.50. In the meantime $5 per annum from this amount was paid to the United States for the annual use rental so if the plaintiff prevails in its contention that this money belongs to it the

amount should be reduced by the sum of $30, consisting of $5 per year for six years.

The contention of the defendant is that when it acquired the rights of Dorchester Land & Timber Company it acquired title to this house and that the same was constructively severed from the realty and that it was and is the owner of the house and was entitled to rent the same and to retain any and all sums paid by the tenant. It points out that the bill of sale shows that there was a recognized severance and although the defendant's contention is that the bill of sale was never delivered, and therefore, Quillian never acquired title to the house, nevertheless, its position is that it did have and retained the house. This position is taken in spite of the fact that the deed hereinabove referred to conveyed complete and full title to all of the real estate, buildings and property on the same, subject only to the right of removal for a limited period, which right was never exercised. It also overlooks the fact that while a severance was possible and permitted during the year within which the house could be removed this did not continue after such right was ended and the complete title to land, timber, houses and all other incidental rights became vested in the United States. Considerable correspondence between the parties showing their respective contentions was introduced in evidence. A representative of the government testified that he really in good faith thought that Quillian had acquired the house and that the Forestry Service was willing to let him have the use of the land for a nominal rental rather than force him to move the house or declare it forfeited. He maintained that he had no idea that the bill of sale was false and that The North State Lumber Corporation ever retained any right in the premises until he subsequently found out that The North State Lumber Corporation was collecting the rent and then a demand was made for payment.

From the foregoing facts it seems quite clear that The North State Lumber Corporation never did have any right or title in this property since the date when the right to remove expired and nothing has been shown me giving it any right to exercise the prerogative of landlord and collect rentals from tenants on realty owned by the United States. It admits that it has collected rents and the amounts are not in dispute. It is in possession of money to which it is not entitled and which it collected as an ostensible landlord. The true landlord asks that these collections be paid over to it.

The defendant reiterates in its argument and brief that the form of action in this cause is improper because of the fact that it, the defendant, was in possession and that the plaintiff has no right to bring this action for an accounting under these circumstances. Numerous cases and authorities are cited. They might be applicable if the facts were as claimed. But the testimony does not bear this out. It appears to me irrefutable that all title and possession passed from the defendant and its predecessors in title. The defendant during the year of grace for removing buildings had the right to remove the house in question, but its right ceased at the end of a year. It pretended to convey this right by the bill of sale to Quillian. It now says, however, that it never did make such a conveyance and that the bill of sale was never delivered and that all the time it retained possession of the house. The testimony contradicts this position. The defendant disappeared entirely from the picture excepting that having misled the United States by exhibiting to it a bill of sale, which was never delivered and, therefore, was a mere sham and delusion, it, the defendant, proceeded to collect rents from Quillian. It seems to me that the recital of these facts is a complete answer to the defendant's claim that this is an improper form of action. An excellent description of a trustee de son tort will be found in 26 R.C.L. under "Trusts", at page 1251:

"97. Wrongful Assumption of Control of Property.—Where a person intermeddles with, and assumes the management of, property, without authority, he will be held to be a trustee de son tort. Thus one who assumes the management and control of the land of another thereby constitutes himself the trustee of the owner, and can do nothing prejudicial to the interests of such owner while such relations exist."

The foregoing statement is amply supported by various authorities set forth in the notes and in fact, the language of the above quotation is in great part taken from the case of Bailey v. Bailey, 67 Vt. 494, 32 A. 470, 48 Am.St.Rep. 826.

In passing upon the defendant's various motions as to the right of the plaintiff to bring this action in its present form, it is important to keep in mind these facts:

828

(a) The bill of sale was never delivered and did not carry valid title, but was signed and exhibited by the defendant so as to induce the United States to issue its use permit, and surely the defendant can not claim to profit by its own wrongdoing in exhibiting to the United States an alleged true bill of sale, which according to its own showing was false.

(b) The United States can not be said to be estopped since it did not have the true facts before it and it was misled into acquiescing in the occupancy of the house by Quillian without paying proper rent because it was led to believe that Quillian had acquired the house, this belief being induced by the wrongdoing of the defendant who misled the government officers.

(c) Quillian was a tenant of the United States, not of the defendant, and this is a suit for money wrongfully obtained by one who misled the parties and thereby obtained profits, which it attempted to hold for itself.

### Findings of Fact

1. I find that the United States became the owner and was in possession of the house, which is the subject matter of this action by the deed of conveyance dated August 8, 1935, subject to the removal of the house during the year following.

2. A. C. Quillian became and continued a tenant commencing on the 1st day of October 1936, until the end of November 1941.

3. The defendant subsequent to October 1, 1936, had no right of possession of, and did not have any actual possession of, the house.

4. The defendant collected rents from A. C. Quillian for a period from October 1, 1936, through December 31, 1940, at the rate of $7 per month and thereafter at the rate of $8.50 per month to and through November 30, 1941, making a total aggregate collection of $450.50.

5. The United States received the sum of $5 per annum, for which credit was given by the defendant to A. C. Quillian over a period of six years, so that the defendant is entitled to a deduction of $5 per annum; that is to say, the sum of $30.

From the foregoing discussion and findings of fact I have reached the conclusion that the United States is entitled to judgment against the defendant for the sum of $450.50, with interest at the rate of six per cent per annum computed on each installment of rent when the same fell due, less the sum of $5 per annum, such $5 credit to be applied on annual dates when paid. And I further find that the defendant has no right or interest in the premises, which are the subject matter of this action. Accordingly, it is

Ordered, that the plaintiff, the United States of America, have judgment against the defendant, The North State Lumber Corporation for the sum of $450.50, together with interest thereon to be computed as above set forth, less the sum of $30 to be credited on dates as above set forth; and also for the costs of this action.